■ MARY REILLY, as Administratrix of the Estate of JOHN REILLY, Deceased, Respondent, v. NEW YORK CITY TRANSIT AUTHORITY, Appellant.— Judgment, Supreme Court, Bronx County, entered January 5, 1972, in favor of plaintiff, after trial to the court and a jury, reversed, on the law, without costs and without disbursements, and vacated, and the complaint dismissed. Plaintiff-respondent administratrix' decedent was struck by defendant-appellant's subway train while he was lying under the overhang of the platform in a station being entered by the train. He survived two days, and the verdict

was for both wrongful death and conscious pain and suffering. Since there was no evidence whatever from which ordinary negligence might have been inferred, nor any as to how the unfortunate decedent came to his position under the platform, plaintiff's reliance must be on the theory of last clear chance. Thus, the key issue in the case was whether by the exercise of appropriate diligence the motorman could have stopped the train and avoided the accident. Corroborative of the motorman's testimony that the decedent was not on the open track but under the overhang is the unquestioned evidence that decedent suffered no amputation by car wheels passing over some part of his body. The sole eyewitness evidence as to the distance at which the motorman first saw something out of the ordinary came from his own pretrial deposition. Summarized, it is that he approached the station at about 40 miles per hour on a slight downgrade, braking about 75 feet away from the platform and, about 100 feet down the platform, he first saw a white object in the dimly lighted space under the overhang. He said, further, that emergency stopping distance at the speed traveled at that moment was at least 250 feet. He immediately applied the brakes fully, but the train continued about 125 feet past what he observed on the way forward to be a man "stretched out under the overhang, sound asleep." The fatal injuries were apparently caused by the projecting contact shoe. Plaintiff's witness, a professional engineer, testified that he rode the subway line to duplicate the train's path at the point of accident and that decedent could have been seen at least 250 feet away from the station's end, and about 460 feet from decedent's location. Suffice it to say that, not alone was this observation not made by one actually engaged in train operation, but that his position was different from that of the motorman. His observation was not made from the motorman's cab but from the front door, at an angle more obtuse to the platform, which would have afforded a larger field of observation. And it is essential to the invocation of the doctrine of last clear chance that the calculation of time of opportunity to avoid an accident cannot commence until actual knowledge of the dangerous situation on the part of the one charged with dereliction of duty. (*Polk* v. *New York Cent. R. R. Co.*, 10 A D 2d 703, affd. 8 N Y 2d 1106.) On this record, it is established that defendant's motorman did not have knowledge of decedent's position of peril until too late to avoid the accident. Though such knowledge may be established circumstantially, plaintiff's engineer witness' evidence provides no basis for anything but speculation that it could have been otherwise. If we did not dismiss, we would order a new trial, on the law and the facts, as against the weight of credible evidence. Concur — Stevens, P. J., Markewich, Lane and Tilzer, JJ.; Kupferman, J., dissents in the following memorandum: The scene in this action to recover damages for the wrongful death and conscious pain and suffering of deceased is the IRT Lexington Avenue Subway Line at the 23rd Street Station in Manhattan, well known to the Judges of this court. Testifying for the plaintiff on the question of last clear chance, was a professional safety engineer who, although not engaged in train operations, had used the specific subway station for many years, and who for the purpose of his testimony, rode some 20 trains from Grand Central Station through 23rd Street on the local track, which is substantially straight from the station at 28th Street to 23rd Street. If, as this court's opinion indicates, his angle of observation from the front door of the train gave him a better vista, then the fact that a motorman had a much poorer view raises an area of negligence not otherwise explored, but it is aside from the point. We should start with *Noseworthy* v. *City of New York*, (298 N. Y. 76) in which in a similar subway train death with the motorman as the only eyewitness, it was made clear that the plaintiff is not

held to the high degree of proof required in a case where the injured person may take the stand. We should then consider the fact that the Second Department in *Lee* v. *General Baking Co.* (40 A D 687), has held that it was for the jury to determine in a last clear chance situation, whether there was "actual knowledge of plaintiff's peril". In our case the jury has obviously determined that question, from the evidence presented, in favor of the plaintiff. This court then, finds speculative the only possible evidence that the plaintiff could have produced under the *Noseworthy* doctrine and takes from the jury its fact-finding function to create a split in the holdings between the First and Second Departments. I find no justification for this course and I must dissent.